IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FRANCHESCA KING, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | |
| } | 2:12-cv-2884-WMA |
| ASSOCIATED GROCERS OF THE } | |
| SOUTH, INC. and JOHN GILBERT, } | |
| } | |
| Defendants. } | |

**MEMORANDUM OPINION**

Before the court is a motion to compel arbitration filed by defendants, Associated Grocers of the South, Inc. ("Associated Grocers") and John Gilbert ("Gilbert"). Doc. 15. Plaintiff, Franchesca King ("King"), opposes the motion, doc. 18, and defendants have responded. Doc. 20. For the reasons that follow, defendants' motion to compel arbitration will be granted.

**FACTS**

Associated Grocers is a wholesale grocery cooperative that provides a variety of services for over 300 independent grocery stores in five states. Since March 1, 2004, Associated Grocers has presented all of its non-union employees with an Alternative Dispute Resolution Policy ("ADR Policy") that they must sign as a condition of employment. The ADR Policy provides that employees agree to submit all disputes involving "Covered Claims" to arbitration. It further states that "Covered Claims" are "any and

1

all disputes arising out of, or relating to, the employee's employment with the Company." It goes on to list examples of "Covered Claims" including but not limited to: "actions under Title VII of the Civil Rights Act of 1964;" "any claim of retaliation, including claims under Alabama Code Section 25-5-11.1;" and "tort claims, (including, but not limited to, negligent or intentional injuries, defamation, and sexual harassment)." Doc. 18-2, page 1-2. It also states that employees have the same right as the company to assert the ADR Policy and to require arbitration when faced with a lawsuit brought by another employee and related to their employment.

On April 8, 2004, King applied for a job with Associated Grocers and was offered a non-union recoup clerk position. On April 9, 2004, she completed Associated Grocers's employment paperwork, including the ADR Policy, at which time she signed and dated the ADR Policy's acknowledgment and receipt form that stated:

> I acknowledge that I have received and reviewed a copy of Associated Grocers of the South, Inc.'s Alternative Dispute Resolution Policy ("ADR") and I agree to this ADR Policy as a condition of my employment. I understand that, among other things, the ADR Policy requires all non-union employees to arbitrate certain Covered Claims defined by the Policy rather than litigate such claims in court.

Doc. 18-2, page 7. King was also given an Employee Handbook with an acknowledgment of receipt form that she signed and dated. It stated:

2

> I acknowledge receipt of the Associated Grocers of the South, Inc.'s Employee Handbook and the fact that I have read and understand it. I further acknowledge that the provisions of employment stated in this handbook are not contractual. Company policies and procedures, whether included in this handbook or not, are in no way contractually binding on any party. Also, I understand that the company reserves the right to amend, revoke, replace, suspend or add, without notice, any or all of its policies and procedures, whether or not contained or referenced in this handbook.

Doc. 18-1 at page 29.

King began her work as a recoup clerk only after her completion of these employment forms. She was later promoted to work as a transportation clerk and/or transportation supervisor. Beginning in January 2007 and continuing until the end of King's employment, John Gilbert was her supervisor. On March 25, 2011, King's employment was terminated. Associated Grocers maintains that the reason for her termination was her excessive tardiness, but King claims other reasons, and on September 5, 2012 she filed the above entitled action that she was fired for discriminatory reasons. She also alleges, among other complaints, that she was subjected to a hostile work environment and that Gilbert sexually harassed her.

Defendants invoke the ADR Policy and assert that all of plaintiff's claims are "Covered Claims" under the ADR Policy and

that plaintiff should be ordered to arbitration.[1]

## DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, "preempts state law to the extent that it treats arbitration agreements differently than other contracts." *Caley v. Gulfstream Aerospace Corp.*, 428 F. 3d 1359, 1367 (11th Cir. 2005). The Supreme Court has clarified the statute by holding that employment agreements fall under the FAA, and are thus enforceable as long as they involve interstate commerce and are valid contracts under the governing state law. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). Defendants assert that King worked in five states, and that this meets the interstate commerce requirement. King does not deny that the interstate commerce element exists. However, she attacks the validity of the contract.

The basis of King's argument is an Alabama Supreme Court case in which that court found that the inclusion of vitiating language in the employee handbook invalidated the arbitration provision that

---

[1] Count 1 - "Quid Pro Quo Sexual Harassment" in violation of Title VII; Count 2 - "Hostile Working Environment - Sexual Harassment" in violation of Title VII; Count 3 - "Hostile Working Environment - Racial Harassment" in violation of Title VII; Count 4 - "Disparate Treatment" on the basis of race and gender in violation of Title VII; Count 5 -"Retaliation"in violation of Title VII    for protesting against racial and sexual discrimination; Count 6 - "Negligence, Wantonness and/or Recklessness" that caused emotional and other injuries; Count 8 - "Negligent/Wanton Hiring, Training, Supervision, and/or Retention of John Gilbert"; Count 9 - "Negligent/Wanton Hiring, Training, Supervision, and/or Retention" of other employees; Count 10 - "Invasion of Privacy. Plaintiff also listed Count 7 - "Respondeat Superior/Vicarious Liability."  This is a theory of liability for which Associated Grocers could be responsible for the acts of defendant Gilbert, but it is not an independent cause of action.

also appeared in the handbook. *Ex Parte Beasley*, 712 So. 2d 338 (Al. 1998). In *Beasley*, the plaintiff had signed an acknowledgment form providing, *inter alia*, that "no written statement or agreement in this handbook. . . is binding." *Id.* at 340. The Alabama Supreme Court found that the words "no written statement" included the handbook's statement requiring employees to use arbitration, and thus directed the trial court to vacate its order that compelled plaintiff employee to arbitrate her claims against her employer. *Id.*

King asserts that her situation is analogous to *Beasley* because the acknowledgment form she signed in her employee handbook stated that the provisions are "in no way contractually binding on any party." However, King's arbitration agreement was a completely separate signed document that was not part of the employee handbook. In *Beasley*, the court addressed such a situation:

> The acknowledgment form contained in Brookwood's standard employee handbook would have created a binding obligation to arbitrate under *Patterson* if Beasley had signed that form; however, she did not sign that form. . . . Absent Beasley's signature on a document that contains a valid arbitration clause, we cannot hold that she agreed to arbitrate her employment claims against Brookwood.

*Id. citing Patterson v. Tenet Healthcare, Inc.*, 113 F. 3d 832 (8th Cir. 1997) (holding that the arbitration clause was an enforceable contract because it was separate from the handbook and its

5

disclaiming language[2]). The situation before this court is much more analogous to *Patterson* than to *Beasley* because the arbitration agreement is a separate enforceable contract that is not affected by the language of the employee handbook. There is no ambiguity in the ADR Policy, which King is presumed to have read.

King argues that despite the separateness of the documents, the handbook acknowledgment form language vitiates the arbitration agreement because it says company policies are not binding on any party "whether included in this handbook or not." However, there is no reason to look outside of the arbitration agreement to discern its enforceability. "General contract law requires a court to enforce, as it is written an unambiguous and lawful contract." *Drummond Co., Inc. v. Walter Industries, Inc.*, 962 So. 2d 753 (Al. 2006). The arbitration agreement being unambiguous, the analysis does not move to an examination of extrinsic evidence like the employee handbook.

The arbitration agreement's enumerated list of "covered claims" for which arbitration is required includes each of the types of claims brought by King. Therefore, not only is the arbitration agreement a valid contract and thus enforceable under the FAA, but it also applies to all of King's claims. Furthermore,

---

[2] "We believe that the difference in language used in the handbook and that employed in the arbitration clause would sufficiently impart to an employee that the arbitration clause stands alone, separate and distinct from the rest of the handbook. The reservation of rights language refers to the handbook provisions related to employment, not to the separate provisions of the arbitration agreement." *Patterson*, 113 F. 3d 835.

the agreement states that the right to arbitration belongs to other employees when they face a lawsuit brought by a fellow employee. Therefore, Gilbert is allowed to force the arbitration of the claims brought against him.

**CONCLUSION**

For the foregoing reasons, defendants' motion to compel arbitration will be granted. A separate order effectuating this opinion will be entered.

DONE this __4th__ day of January, 2013.

 

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE